# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| CHRISTINA WEATHERSPOON<br>9509 Mobile Acres<br>Hamersville, OH 45130 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>)<br>) | |
| ALMOST FAMILY, INC.<br>d/b/a/ Home Care by Black Stone<br>4400 OH-222<br>Batavia, OH 45103 | )<br>)<br>)<br>)<br>) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also**: | )<br>) | |
| ALMOST FAMILY, INC.<br>d/b/a Home Care by Black Stone<br>4700 East Galbraith Road, Suite 300B<br>Cincinnati, OH 45236 | )<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| ALMOST FAMILY, INC<br>c/o LHC Group, INC.<br>901 Hugh Wallis Rd South<br>Lafayette, LA 70508 | )<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| ALMOST FAMILY, INC.<br>c/o FBT Ohio, Inc. (Stat. Agent)<br>3300 Great American Tower<br>301 East Fourth Street<br>Cincinnati, OH 45202 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Plaintiff Christina Weatherspoon ("Weatherspoon"), by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Weatherspoon is a resident of the city of Hamersville, Brown County, state of Ohio.

2. Defendant Almost Family, Inc., ("Almost Family") is a foreign incorporated, for-profit company from the state of Delaware that conducts business throughout the state of Ohio.

3. The relevant location where the events and/or omissions of the Complaint took place was 4400 OH-222, Batavia, Clermont County, Ohio 45103, and at other Almost Family locations.

4. Almost Family is, and was at all times hereinafter mentioned, Weatherspoon's employer within the meaning of the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 *et seq.*, and R.C. § 4112.01 *et seq*.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Weatherspoon is alleging a federal law claim under FMLA.

6. This Court has supplemental jurisdiction over Weatherspoon's state law claims pursuant to 28 U.S.C. § 1367, as they are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C § 1391(b)(1) and (2).

## FACTS

### A. Overview

8. Weatherspoon is a former employee of Almost Family.

9. At all times herein, Weatherspoon could fully perform the essential functions of her job, with or without reasonable accommodations.

10. Weatherspoon has anxiety, depression, and was injured on the job, placing her in a protected class for her disability and/or perceived disability.

11. Weatherspoon worked as a state-tested nurse's aide ("STNA") from in or around February 2017, until Almost Family constructively terminated Weatherspoon's employment on or around August 22, 2019.

### B. Weatherspoon was Injured on the Job

12. Weatherspoon's job duties at Almost Family included working directly in the homes of patients.

13. On or around March 18, 2018, Weatherspoon was working in a patient's home.

14. After helping the patient shower, Weatherspoon was carrying a basket of laundry down the stairs when she twisted her ankle, fell down the rest of the stairs, and hit her knee.

15. Weatherspoon required a few moments to recover.

16. On or around March 19, 2018, Weatherspoon's knee was still hurting so she called Crystal LNU (Almost Family employee, Title Unknown) about the injury.

17. Crystal LNU then notified Tammy LNU (Almost Family employee, Case Manager), who in turn reached out to Weatherspoon and instructed her to go to an Urgent Care for evaluation.

18. Weatherspoon went to an Urgent Care and upon evaluation was diagnosed with anterior strains across her right-side extremities.

19. The Urgent Care recommended work restrictions for Weatherspoon until she was fully recovered.

20. The work restrictions included not working at residents' home if they had five or more stairs, not climbing, not standing for longer than 1.5 hours, and not lifting more than 25 pounds.

21. Weatherspoon also started physical therapy ("PT").

22. The Urgent Care completed a Worker's Compensation application for Weatherspoon.

23. Ronald Tokar (case manager for Almost Family's private insurance company) was assigned as Weatherspoon's case manager for the Worker's Compensation claim.

### C. Weatherspoon's Condition Worsened

24. After a few weeks of PT without improvement, Weatherspoon's therapist suggested she get an MRI.

25. The MRI revealed that Weatherspoon had torn her right meniscus and possibly a tendon.

26. Weatherspoon was referred to specialists and told she would need surgery on her knee and her ankle.

27. On or about May 3, 2018 Weatherspoon had her knee surgery.

28. On or about June 6, 2018 Weatherspoon had her ankle surgery.

29. On or about November 26, 2018 Weatherspoon attempted to return to work but needed to continue her detailed work restrictions.

30. At that time, Almost Family asserted it could not provide light duty work that met her restrictions, so it kept Weatherspoon off work.

### D. Almost Family Cut Weatherspoon's Hours

31. On or about March 21, 2019, Weatherspoon's doctor again allowed her to return to work but maintained she had to keep her light-duty work restrictions.

32. Weatherspoon returned to work full time at the end of March 2019 for light-duty work in the Almost Family office, but had her hours cut down to three days per week at the beginning of April.

33. This cut in Weatherspoon's hours was an adverse employment action against her.

34. When Weatherspoon complained of the cut hours, Almost Family's CEO explained that this was because there was a lack of light-duty work available.

**E. Almost Family Did Not Properly Inform Weatherspoon of the Necessary Paperwork to File for Worker's Compensation**

35. In or around June 2019, Weatherspoon's doctor diagnosed her with two further injuries in her right ankle that resulted from the March 2018 Worker's Compensation injury.

36. Weatherspoon contacted Tokar to update him on her additional injuries and Tokar replied he would submit paperwork for them shortly.

37. Tokar never submitted any paperwork concerning her additional injuries.

38. Shortly after, Weatherspoon's additional Worker's Compensation claims were denied citing incomplete documentation.

39. Evidently, Joyce LNU (Employee at Weatherspoon's doctor's office) had improperly filled out the worker's compensation paperwork and that Weatherspoon herself was supposed to fill it out.

40. Tokar had not notified Weatherspoon that she would be required to do this.

41. Weatherspoon was able to rectify the situation in or around November 2019.

### **F. Almost Family Refused to Give Weatherspoon Her Raise**

42. On or around July 2, 2019, Weatherspoon's doctors released her to go back to work without restrictions.

43. At this time, Weatherspoon had successfully received her STNA certification. She had received it roughly two days after her initial hire, but Almost Family had not yet updated its system and still had her labeled as a health aide associate.

44. It was a common practice at Almost Family to give STNAs a raise once they receive their STNA certifications.

45. Weatherspoon asked for a raise, as she was the only employee, upon information and belief, that had obtained the certification but not given a raise.

46. Almost Family did not give Weatherspoon a raise.

47. Upon information and belief, Almost Family gave all other similarly-situated employees who had received their STNA certification but had not a filed worker's compensation claims a raise.

48. This refusal was an adverse employment action against Weatherspoon.

49. Weatherspoon complained that she felt retaliated against for filing the worker's compensation claim.

50. Weatherspoon's complaint was a protected activity.

### **G. Almost Family Constructively Terminated Weatherspoon's Employment**

51. Weatherspoon continued to request more hours as she was still only working three-day weeks despite her work restrictions being lifted.

52. Weatherspoon told Julie McFarland (scheduler for Almost Family) numerous times that she needed to be returned to full-time work.

53. McFarland did nothing to assist Weatherspoon and Almost Family never reinstated Weatherspoon to her full-time position.

54. This action was an adverse employment action against Weatherspoon.

55. As a result, Weatherspoon was forced to resign, which she made effective on or about August 22, 2019.

56. Any reasonable person in Weatherspoon's situation would have also felt forced to resign.

57. The purported reason Almost Family changed Weatherspoon's hours was due to a lack of light-duty work available to accommodate Weatherspoon's work restrictions.

58. This purported reason was pretextual.

59. With her work restrictions lifted, Weatherspoon was fully capable to return to her full-time position.

60. Weatherspoon explicitly asked to return to her full-time position, and Almost Family purposefully ignored her requests.

61. Despite Almost Family's purported reasoning for keeping Weatherspoon working three-day weeks no longer applying to her situation, Almost Family refused to return Weatherspoon to a position for which she was qualified, and for which she could perform the essential job functions.

62. Therefore, Almost Family discriminated against Weatherspoon by refusing to return her to a position for which she was qualified and for which she could perform the essential job functions.

63. As a result of Almost Family's acts and omissions, Weatherspoon has suffered and will continue to suffer damages.

## COUNT 1: DISABILITY DISCRIMINATION IN VIOLATION OF

## O.R.C. §  4112.01 *et seq.*

64. Weatherspoon restates each and every paragraph of this Complaint as if they were restated herein.

65. As described *infra*, Weatherspoon is disabled.

66. Alternatively, Almost Family perceived Weatherspoon as being disabled.

67. During her employment with Almost Family, Weatherspoon was subjected to offensive and harassing conduct based on her actual and/or perceived disability from her superiors and coworkers.

68. Almost Family knew or should have known of the harassing conduct against Weatherspoon.

69. Almost Family conduced, tolerated, and ratified this harassing conduct against Weatherspoon.

70. This harassing conduct was severe and/or pervasive.

71. This harassing conduct was offensive to Weatherspoon

72. This harassing conduct would also be offensive to any reasonable person.

73. This harassing conduct interfered with Weatherspoon's ability to perform her job duties.

74. This harassment was based on Weatherspoon's actual and/or perceived disability.

75. This harassing conduct was so severe and pervasive that it materially altered the conditions of Weatherspoon's employment.

76. Almost Family's refusal to reinstate Weatherspoon as a full-time employee was an adverse action against Weatherspoon.

77. Any reasonable person in Weatherspoon's place would also have no choice but to resign due to the conduct.

78. Almost Family treated Weatherspoon differently than other similarly-situated employees based on her actual and/or perceived disabling conditions.

79. Weatherspoon, with no other reasonable choice, was then forced to resign her employment.

80. On or about August 22, 2019, Almost Family forced Weatherspoon to resign without just cause.

81. Weatherspoon's resignation was a constructive termination, and therefore an adverse employment action.

82. Almost Family constructively terminated Weatherspoon's employment.

83. Almost Family forced Weatherspoon to resign based on her actual and/or perceived disabling condition.

84. Almost Family violated R.C. § 4112.02 when it constructively discharged Weatherspoon based on her actual and/or perceived disabling condition.

85. Almost Family violated R.C. § 4112.02 by discriminating against Weatherspoon based on her actual and/or perceived disabling condition.

86. Weatherspoon suffered emotional distress as a result of Almost Family's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

87. As a direct and proximate result of Almost Family' conduct, Weatherspoon suffered and will continue to suffer damages.

## COUNT II: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

88. Weatherspoon restates each and ever paragraph of this Complaint as if they were fully restated herein.

89. Pursuant to 29 U.S.C. § 260 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

90. Almost Family is a covered employer under FMLA.

91. During her employment, Weatherspoon qualified for FMLA leave.

92. Almost Family failed to properly advise Weatherspoon of her rights under FMLA.

93. Instead of offering Weatherspoon proper advisement, Almost Family constructively terminated her employment.

94. Therefore, Almost Family unlawfully interfered with Weatherspoon's exercise of her rights under FMA in violation of § 105 and § 825.220 of the FMLA regulations.

95. Almost Family conduced, tolerated, and ratified this interference against Weatherspoon.

96. Almost Family knew or should have known of the interference against Weatherspoon.

97. This interference was severe and/or pervasive.

98. This interference was offensive to Weatherspoon

99. This interference would also be offensive to any reasonable person.

100. This interference interfered with Weatherspoon's ability to perform her job duties.

101. This interference was based on Weatherspoon's qualified medical and/or family situation.

102. This interference was so severe and pervasive that it materially altered the conditions of Weatherspoon's employment.

103. Almost Family's interference with Weatherspoon's ability to obtain FMLA leave was an adverse action against Weatherspoon.

104. Any reasonable person in Weatherspoon's place would also have no choice but to resign due to the interference.

105. Almost Family treated Weatherspoon differently than other similarly-situated employees based on her qualified medical and/or family situation.

106. Weatherspoon, with no other reasonable choice, was then forced to resign her employment.

107. On or about August 22, 2019, Almost Family forced Weatherspoon to resign without just cause.

108. Weatherspoon's resignation was a constructive termination, and therefore an adverse employment action.

109. Almost Family constructively terminated Weatherspoon's employment.

110. Almost Family forced Weatherspoon to resign based on her qualified medical and/or family situation.

111. Almost Family violated R.C. § 4112.02 when it constructively discharged Weatherspoon based on her qualified medical and/or family situation.

112. Almost Family violated R.C. § 4112.02 by discriminating against Weatherspoon based on her qualified medical and/or family situation.

113. Weatherspoon suffered emotional distress as a result of Almost Family's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

114. As a direct and proximate result of Almost Family's interference, Weatherspoon is entitled to all damages provided for in 29 U.S.C. § 4617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT III: RETALIATORY DISCRIMINATION

115. Weatherspoon restates each and every paragraph of this Complaint as if they were fully restated herein.

116. After receiving her STNA certification, Weatherspoon complained to Almost Family about not receiving the raise that her similarly-situated colleagues received when they achieved their STNA license.

117. Further, Weatherspoon complained to Almost Family when she was not reinstated to her full-time position after her work restrictions were lifted.

118. Almost Family never gave Weatherspoon the raise nor the full-time position.

119. Almost Family ignored her protected complaints.

120. Almost Family withheld the raise and full-time position in retaliation against Weatherspoon for filing the complaints that opposed the unlawful discriminatory conduct she was being exposed to.

121. Pursuant to R.C. § 4112 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person had opposed any unlawful discriminatory practice.

122. Almost Family conduced, tolerated, and ratified an unlawful discriminatory practice against Weatherspoon.

123. Almost Family knew or should have known of the unlawful discriminatory practice directed at Weatherspoon.

124. This unlawful discriminatory practice was severe and/or pervasive.

125. This unlawful discriminatory practice was offensive to Weatherspoon.

126. This unlawful discriminatory practice would also be offensive to any reasonable person.

127. This unlawful discriminatory practice interfered with Weatherspoon's ability to perform her job duties.

128. This unlawful discriminatory practice was based on Weatherspoon's opposition to the unlawful discriminatory practices she was exposed to.

129. This unlawful discriminatory practice was so severe and pervasive that it materially altered the conditions of Weatherspoon's employment.

130. Almost Family's unlawful discriminatory practice was an adverse action against Weatherspoon.

131. Any reasonable person in Weatherspoon's place would also have no choice but to resign due to the unlawful discriminatory practice.

132. Almost Family treated Weatherspoon differently than other similarly-situated employees by refusing to give her a raise and by ignoring her requests for full-time work when she got her work restrictions lifted.

133. Weatherspoon, with no other reasonable choice, was then forced to resign her employment.

134. On or about August 22, 2019, Almost Family forced Weatherspoon to resign without just cause.

135. Weatherspoon's resignation was a constructive termination, and therefore an adverse employment action.

136. Almost Family constructively terminated Weatherspoon's employment.

137. Almost Family forced Weatherspoon to resign by refusing to give her a raise and ignoring her requests for full-time work when she got her work restrictions lifted.

138. Almost Family violated R.C. § 4112.02 when it constructively discharged Weatherspoon by refusing to give her a raise and ignoring her requests for full-time work when she got her work restrictions lifted.

139. Almost Family violated R.C. § 4112.02 by discriminating against Weatherspoon by refusing to give her a raise and ignoring her requests for full-time work when she got her work restrictions lifted.

140. Weatherspoon suffered emotional distress as a result of Almost Family's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

141. As a direct and proximate result of Almost Family's retaliation against and constructive termination of Weatherspoon, Weatherspoon suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Weatherspoon demands from Almost Family the following:

(a) Issue an order requiring Almost Family to restore Weatherspoon to the position to which she was entitled by virtue of her application and qualifications, and expunge her personnel files of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Weatherspoon for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim, to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Weatherspoon's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted

/s/ Matthew G. Bruce
Matthew G. Bruce (0083769)
      Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax: (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Christina Weatherspoon*

## **JURY DEMAND**

Plaintiff Christina Weatherspoon demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew G. Bruce

Matthew Bruce (0083769)